**SMITH v. UNITED STATES.**

No. 12573.

United States Court of Appeals
Ninth Circuit.

Feb. 26, 1951.

Rehearing Denied June 15, 1951.

970

Irving Kipnis, Tucson, Ariz., and Jackson E. Nichols, San Francisco, Cal., for appellant.

Frank E. Flynn, U. S. Atty., Phoenix, Ariz., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

The Arizona Institute of Aeronautics, Inc., hereinafter called the Institute, entered into a contract with the Veterans Administration for on-the-job training of veterans. As a part of the training program certain supplies were furnished the students by the Institute and the Veterans Administration billed for the cost, such billing being in the form of vouchers supposed to reflect the true amount due. Appellant, a director and stockholder of the Institute, was indicted, tried and convicted on a charge of having presented to the Veterans Administration, an agency of the United States of America, for payment, a false claim in the name and on behalf of said Institute, in violation of § 287, 18 U.S.C.A.

■ Eight assignments of error are made. In oral argument appellant stressed but one, number 8, later in this opinion considered. Assignments 1 and 2 deal with an alleged defect in the indictment because of its failure to contain certain requirements of § 1001, 18 U.S.C.A. The simple answer to that contention is that the indictment was drawn under § 287, not § 1001. No contention is made of its insufficiency under § 287.

■ Assignments 3 and 4 are directed at a ruling of the trial court denying appellant's offer in evidence of Regulations and Procedure No. 10,539, and Manual M–7–5. The record discloses no more than the offer. The proffered regulations and manual were not marked for identification and have not been incorporated in the record on appeal. The entire regulations were offered. The particular section or sections thereof which appellant deemed material and relevant were not pointed out either in the trial court or this court. Without recourse to the portions of the regulations relied on by appellant we cannot determine the correctness of the court's ruling. We could take judicial knowledge of them had proper reference been made. It is now established that courts usually do. Vol. 9, Wigmore on Evidence, § 2572. Considerable oral testimony was adduced by appellant as to the practice required by the regulations. What further function the introduction of the written regulations could have performed is not stated. The trial court was asked to admit them because they were the best evidence. The best evidence rule is usually invoked by the party against whom that evidence is being produced. The question of the competency, relevancy, and materiality was first presented to this court. Because of the absence of a sufficient reference we are unable to say that error, plain or otherwise, exists in the exclusion of the regulations and pamphlet.

■ Assignment 5 alleges as error the refusal of the trial court to admit in evidence vouchers, other than those mentioned in the indictment, which had been submitted to the Veterans Administration by the Institute for payment. Appellant argues that the rejected vouchers were relevant to establish a course of action which had been followed at the Institute by appellant and others of its officers. Custom, involving criminality, cannot justify a criminal act. If we properly understand appellant's argument it is to the effect that he should not be held to have entertained a criminal intent in presenting the false vouchers because others had been guilty of the same act in a practice acquiesced in by the Vet-

erans Administration. The mere fact that vouchers for false claims, other than those involved in this case, had been paid is not evidence that the Veterans Administration knew they were false at the time of payment. We see no merit in appellant's argument on this point.

 Under specification of error No. 6, it is appellant's contention that he was denied the right of effective cross-examination of witness Streicher who testified on behalf of the Government. The cross-examination of this witness had reached a point where the internal affairs of the Institute were being stressed. The relevancy of this line of testimony is not apparent. The Court informed counsel for appellant that he could proceed to show animosity on the part of the witness toward appellant if such was his purpose but that the internal affairs of the corporation, as such, were of no concern to the Court and jury. Appellant stated the purpose of the cross-examination objected to was to test the credibility of the witness. It could have no such effect.

Specification No. 7 cites certain statements of the trial Court made during the course of the trial. We have read the statements in context and find them to be no more than necessary and proper comment required in explaining rulings and designed to contain the trial within bounds appropriate to the issues being tried.

Assignment 8 deals with proceedings subsequent to the submission of the case to the jury and prior to the rendition of its verdict. The cause was submitted to the jury at 4:10 p. m. At 5 p. m. the jury returned to open court and the following proceedings were had:

"The Court: Ladies and gentlemen, you have been out now for about an hour and it is getting late. I understand you have not reached a verdict. I want to advise you that if there isn't a verdict by 5:20 o'clock I shall be available after dinner and up until 9:00 o'clock, providing the elevators here are running. If they make provisions for elevator service I will be available until 9:00 o'clock, otherwise I shall receive your verdict in the morning.

"It might interest you to know that your conversations have been so loud in the jury room that you have been heard all over this portion of the building.

"It is very apparent the jury is paying very little attention to the court's instructions. You are arguing as to whether I am a tough judge or not and whether the entire outfit should be in court. Those are things I told you to stay away from. However those have been the subject of your arguments.

"I thought you might be interested to know that. We have heard everything you have said, particularly when your voices were raised. I am making these comments but you don't have to pay any attention to my instructions unless you want to and you are privileged to discuss me, but I don't happen to be the defendant in this case and I am not interested in your verdict except that you arrive at one.

"I have instructed the bailiff to provide you with dinner if you haven't arrived at a verdict by 5:20. If you arrive at a verdict after that and I can get in the building I will be here to receive it, but I am not going to put myself in the same position that Judge Speakman is in by climbing stairs at night. If I can get an elevator I will receive your verdict up to 9:00 o'clock. If you haven't arrived at a verdict by that time comfortable quarters will be provided for you in a hotel.

"I am making this statement so you will understand why I can't stay here indefinitely and why provisions will be made for you.

"With that you are instructed to retire to your jury room."

At 5:35 p. m. the jury returned to open court and presented a verdict finding the defendant guilty. The Court permitted the jury foreman to present a statement on behalf of the jury which was as follows: "The verdict is guilty but the jury feels he was the victim of circumstances in the case and should be shown leniency."

 Appellant argues that the court proceedings above detailed were a communication by the Judge to the jury which un-

duly interfered with its deliberations and unduly hastened the verdict.

Perhaps the most important statement in that connection is the following remark of the Court:

██ "I am making these comments but you don't have to pay any attention to my instructions unless you want to." If it can be said that this statement, considered in connection with all the circumstances of the case, could have reasonably misled the jury into believing that all instructions theretofore given them could be disregarded then a serious situation would be presented. We cannot agree that the Court so intended its remarks or that the jury could have reasonably so inferred.

The Court had overheard the deliberations and knew that the jury was disregarding instructions and arguing "whether the entire outfit should be in court." From the context, it seems apparent that the jury could have understood only that the Court was saying that he had no power to compel them not to consider "whether the entire outfit should be in court" should they persist. This conclusion is fortified by the instructions given by the Court only a short time earlier, before the jury retired:

"Ladies and gentlemen, it now becomes my duty to instruct you as to the law of this case and under your oaths *it is your duty to follow my instructions as to the law*. In answering the court's questions when you were impanelled you told me *you would follow the court's instructions as to the law of the case and that is your duty*.

"I am to pass on the questions of law. * * * For to the jury exclusively belongs the duty of determining the facts. *The law you must accept from the court as correctly declared in these instructions.*" (Emphasis added.)

We cannot agree that the jury could have considered the subsequent remark by the Court, to which appellant now objects, as flatly contradictory to these explicit admonitions.

The events, as they actually transpired, are entirely consistent with this conclusion.

The fact that the verdict was returned only a short time later, despite the somewhat lengthy deliberations prior to the remark complained of, does not indicate that the jury disregarded the Court's instructions as to the law. We know that the earlier deliberations were prolonged because they were concerned with irrelevant matters. The later deliberations were brief for two reasons: (1) presumably, the jury followed the Court's instructions to disregard the irrelevant matters, and (2) the relevant issues were simple and the evidence was overwhelming. Under these circumstances, the comparative brevity of the deliberations after the remark complained of. does not indicate that the jury disregarded the instructions given earlier. On the contrary, if this had been the jury's understanding of the Court's remark, the jury's obvious concern with the failure to indict other officers of the Institute, when combined with the recommendation of leniency, suggests that the jury would have promptly brought in a verdict of not guilty, rather than guilty.

██ We find no substantial threat of hardship in the remarks of the Judge as to his availability to receive a verdict in the evening and as to the provision of comfortable quarters in the event that the jury had not agreed by 9 p. m. We do not think such remarks could have persuaded a juror entertaining a conscientious conviction that the defendant's guilt had not been proved to surrender it as a matter of expediency. This is not a borderline case where it could be said that the evidence is such that the jury would have been warranted in finding either guilt or innocence. To our minds the verdict was in accordance with both the law and the evidence and was not unduly influenced.

Affirmed.

DENMAN, Chief Judge (dissenting).

I dissent. Here is a clear case of taking from a defendant the court's instruction of his presumption of innocence and his right to acquittal unless his guilt is proved beyond a reasonable doubt. This is the necessary result of saying, "You

don't have to pay any attention to my instructions unless you want to."

Here at 5 p. m. the jury is in a dispute, coming from the jury room so hot and loud that it is heard by the judge in his chambers. He tells the jury it is likely if they do not come to an agreement that they will be locked up for the night. To me it is an absurdity to say of a jury, in such heat it must be reprimanded by the judge, that all the jurors will at once regain the required calm deliberation necessary for what the court describes as a "conscientious conviction." In such heated pressure those for conviction were in a position to say, "The judge himself has told you you don't have to bother about this business of burden of proof and presumption of innocence. Let's settle our quarrels and go home."

No accused in our American system should be put in such a position. The judgment should be reversed.

Rehearing denied; DENMAN, Chief Judge, dissenting.